Good morning, gentlemen. If the clerk could call the first case, please. 325-0239, Araceli Salinas and Lorena Servin, individually and on behalf of other persons, similarly situated, Appellants v. Arthur Schuman Midwest, LLC, Sure Staff, LLC, and Metro Staff, Incorporated, Appelese. Thank you. Before we get started, gentlemen, before the clock starts here, first of all, can everyone hear me? Yes, just a nod would be just fine. And Mr. Beaumont, I don't mean to put you on the spot. We've been trying to work on our procedures here and get everybody signed in about 15 minutes early. The clerk said that you did not receive that notice. Is it because we didn't send it in a way that made it noticeable? I just, I missed it in the preparation for this. I simply missed it. Okay. All right, well, let's get started then. If we can start the clock, Mr. Beaumont, you are the appellant, so whenever you are ready. Thank you. May it please the court. I've got a short statement. The basic facts here are that this is a BIPA case. The plaintiffs were working for the defendant's staffing companies. The plaintiffs alleged the staffing companies extracted and gathered their biometrics when they enrolled plaintiff's fingerprints into a biometric time clock. And we're here on appeal because the trial court denied all discovery. And then dismiss the staffing companies with prejudice on summary judgment. Counsel, you said all discovery. I thought there was some discovery done preliminarily. No, all discovery was denied. Okay. In so doing, the plaintiffs assert the trial court made 3 errors. First, because the defendants MSJs were silo text type. Plaintiffs should have been allowed discovery. Defendants MSJs were silo text type because they challenged plaintiff's lack of evidence. Specifically, defendants argued that plaintiffs could not prove that defendants collected or possessed their biometrics. Pre-discovery summary judgment motions require the movement to show that no possible discovery could yield supporting evidence. That discovery would be futile because all conceivable facts established non-liability. By not addressing all possible ways that the staffing companies could be liable, their motions did not affirmatively disprove a critical element of plaintiff's claim. And as a result, the plaintiffs should have been allowed discovery. The second and third errors that plaintiffs assert revolve around the conflicting testimony between the staffing companies and their co-defendant, Arthur Schuman. This conflicting testimony concerns who directed the use of the biometric time clocks and whether the staffing companies collected biometrics. With this conflicting testimony, the court committed its second error by denying 191B discovery and committed its third error by not construing all available evidence in plaintiff's favor and granting summary judgment. Unless there are any questions, I'd like to reserve the balance of my time for a bubble. Counsel, when you talk about conflicting testimony, you're talking about statements in an affidavit, right? Correct. Correct. Judge. So, when you want to do discovery, can you give me a better idea of what discovery you feel you need? I assume that you would want to depose the affiant. Is there anything beyond that off the top of your head that you feel should have been permitted? We laid it out in a motion about exactly what we would need. We would need to speak with Metro staff, SHURE staff, and with Schuman. You're looking for broader discovery than what I just mentioned. We would likely need documents because taking depositions without documents is having a hand on your back. Okay. Thank you. Mr. Beaumont, you said you wanted to reserve for rebuttal the rest of this. If you could do me a favor, it would be helpful to know where in the record your discovery request was. While the other side is giving their arguments, if you could find that for us, I would greatly appreciate that. And then secondly, I know you've laid out two, I thought you were going to give us three reasons that the court, unless you may have combined the second two, I thought it was three reasons why the court erred. And that's my fault. So, yeah, there are three errors. The first being the, so the first error is the denial of discovery because of a celotex type motion. We should not have, with a celotex type motion, if the defendant is not going to put forth sufficient evidence, we should have a full discovery. Barring that, secondarily, we need a 191B discovery. And then the third assignment of error is that, is that based on the record, the court should have denied the, denied discovery outright, given even the limited factual record that exists now. Okay. So you believe that there is a factual question in this case? Yes. What is that factual question? So the factual question is that, is that the, there are a couple of factual questions here. One, who directed the staffing companies to use the biometric time clocks? The, the, the, the, the, the, the, the staffing companies and their, and, and, and Schuman point the finger at, at each other on that, on that point. The, the second factual question is, is who enabled the biometric feature on the, the, the time clock? Schuman testifies that if, if anyone enabled it, it was done by the staffing companies. And the staffing companies say, well, we never, we never collected biometrics. And so, so those are the, the, the two large contradictions here that, that, that need, that need to that, that need to be flushed out. Mr. Beaumont, when you say enable, is that as simple as turning on the switch? Unfortunately, I don't know. The, the, the, the, based on, based on the, the documents that has been provided so far, because we've gotten so little in discovery, the, the, the, according to Schuman, these, these, these, these biometric time clocks can be, can be used essentially maybe as a, as a regular time clock, or they can, or the biometric features that can be used. And so, and so what the process is to, to enable that, if there's, there's authorizations that are needed, I think it's just, we, we haven't gotten anywhere close to getting any type of discovery to answer anything like that. Okay. Mr. Beaumont, assume for a moment, just for a moment, that the staffing companies never obtained, collected, received, had nothing to do with any biometric data. The only data they got was that somebody clocked in at a time and clocked out at a different time. If that were true, can you win? And, and why? So, if, I just want to make sure that I understand seeing a question correctly, because this is an important question. The, I, I believe what you're saying is that if the defendants had no involvement with the enrollment process. Well, that's, that's, I didn't say anything about the enrollment process. I'm asking whether they, whether they received, if they never received any biometric data, it seems to me that you'd be hanging your hat on the fact that they had something to do with the enrollment process. Okay. I understand. Would that, would that be the only basis you would have to recover under, under BIPA, that they were involved in the enrollment process? I, I, I understand. I see your question now, and this is, this is, it's going to take a little bit of a minute for me to, me to answer, but I, but I'm going to get there. The, so we, so I, the way that I, I, I see your question is, your question is asking if the only allegations against, against the staffing companies are that they collected and that they never possessed the biometrics, that they would not be liable. No, the statute, I believe, talks about collecting or capturing or otherwise obtaining this biometric data. If they, if the biometric data actually never went to them, can you win? I see. So, so it went to a third-party storage. It was, it was stored in it by a third party. If that's the case, can you win? In other words, if the only thing they did was set up the time clock, but they didn't collect any data themselves, and they didn't capture any data or get their hands on it in any way, can you win? So, if, if only, if they only set up the time clock, well, then I, which are not the facts here, I'm, I'm not sure about that, but what, what, but if, but if they, but if they are, if they're collecting the biometric data, if they're, so if they, if they're telling their employees to, to, to go to this machine and have your biometrics extracted, they are by default, by default, that, that is capture according to the Supreme Court and, and, and putting it into one place is collection by the Supreme Court. And yes, so yes, we, we do win with that. Even if it's collected by somebody else, really? Well, I don't understand the, the, if it's someone, someone was collected by someone else, because here the allegations are that the staffing companies were essentially standing over the, the employees requiring the employees to put their, their, their fingerprints into this machine where they were, where they would be extracted and, and, and gathered in one place. Extracted by whom? Did the staffing companies, well, we're getting a little off my question here, but I, I'm, I'm unclear as to, as far as I can tell, there's not much evidence to show that these staffing companies actually got their hands on biometric data. And by that, what, what I am understanding that, that to mean is possession, but, but, but you're saying that that's not possession. So getting your hands on it, like storing it. I'm asking you, if they didn't get their hands on it somehow, then can they be liable under BIPA? So that, so, so that, that's a broader question about, about what, what does it mean to collect? So, so does collect just mean to, to gather and extract or does, does collect mean something else, which is, which is to, which is to kind of get your hands around it or get possession of it or store it somewhere. And, and the Supreme Court has said in White Castle, both around the White Castle that collect means to, means to gather in one place. It means to extract. I know, I know what, I know the definitions and I know what collect means, but I'm not sure that the staffing companies did it. And I'm not sure that there's any evidence to show that they did it. And if they didn't do that, then can they be liable? That's my question. I think we're really kind of going around the mulberry bush with this a little bit. So if you want to move on to any other points, I'll let you do it. I, I, I, I, I frankly would like to stick with it because I, I, I, perhaps this is just some, I'm not understanding and if you give me another shot, maybe I can, I can, I could formulate. As far as I can tell, no biometric data was collected by the staffing companies. It didn't get in their hands. And if that's true, can you still win on a BIPA claim against them? Okay. So I understand the question and, and I would like to take the question in reverse. So the, the here, there is no evidence that the staffing companies did not get the biometrics. The, the staffing companies declarations submitted by Miriam Casio and Marco Diaz do not say that they did not get the biometrics. And so if, if getting the biometrics is an element of collection, then we would need to have discovery on whether, on whether these entities actually got their hands around the biometrics. But, but your question, so I know I'm taking that backwards, but this fact is opposed to, but your question is really about, about what does the law say? And as I, as I appreciate it, if I'm, if I'm misconstruing something, please stop me and correct me. It's about, does the law say that, that, that collecting biometrics means getting your hands around it? And, and as I read the law, that's, that's, that's not, that, that, that is not the case. But, but if it is the case, we would need discovery because, because there is no, because there is no, because there, we have not had an opportunity to, to, to, to vet whether the defendants have, have, you know, gotten their hands around it or not. Thank you, Mr. Beaumont. I appreciate your assistance in that. I hope I answered. Thank you. Justice Holdridge, any questions? No, no. All right. Thank you, Mr. Beaumont. You'll have five minutes on rebuttal. Mr. Sheeran, I believe you're first to go. Yes, Justice. Good morning, and may it please the court. My name is JT, my name is JT Sheeran. I represent Defendant Appellee Sheerstaff, LLC. Just as a national housekeeping matter, I'll be addressing point, or issue one from Appellee's brief, while my colleague, Mr. Gillespie, Metro Staffs Council, will address issue two. And Justice Sanderson, I want to kind of go to your question first, and regarding whether, you know, if, if this, if defendants in this case never got their hands on the data, can they be liable under BIPA? And that answer is no. As the court explained in Cothran, the active verbs in Section 15B, which are capture, purchase, receive, and obtain, all mean to gain control of the biometric data. And you heard Plaintiff's Council discuss, you know, who made the decision to use the time clock, who made the decision to use the finger span, finger scan function on the time clock. That is all irrelevant. The use of the technology does not matter when it comes to an issue of liability under BIPA, or whether an entity is even subject to the requirements of BIPA. And this issue was addressed squarely in both the Barnett and Samsung cases addressed in our brief. In both of those cases, the defendants provided individuals with applications on their iPhone devices or Samsung mobile devices that collected biometric data. In both cases, the data that was collected was stored on the user's device and not with defendants or any of defendant's servers. Both courts held that the control over the technology, the control of the app was insufficient to state a plausible claim under Section 15B. What matters for the purposes of BIPA is who has control over the biometric data. Here, plaintiffs don't even allege a claim under Section 15A against defendants, sure staff and metro staff, for possessing the biometric data, which is a necessary element of collection under 15B. And contrary to the statements from Mr. Beaumont, there is evidence that sure staff never got their hands on the biometric data, as well as metro staff. The affidavits we submitted at the trial court both state that they could not even access, much less control, the biometric data from the time clocks at issue. And the record is also very clear. All the parties truly agree on the material facts of what happened in this case. Sure staff, I'm sorry, I apologize, Schumann leased the time clocks from PACOM, and pursuant to that lease, Schumann is the only entity that could possess those time clocks. Those time clocks have allegedly extracted biometric data, and that data is stored on the time clocks themselves or PACOM servers. The only data that the defendant staffing companies can access is the punch data, whether the employee clocked in and clocked out at the right time, and their name, address, and kind of basic information along those lines. That is not biometric data, and those entities could not access any of the biometric data that was stored on the clocks or on the servers. In limiting liability, pardon me, is Schumann still in the case? Schumann is still in the case. And aren't Schumann and your clients in somewhat of joint venture here? Your client provides workers for them, and your client, obviously you're saying that just because your client requires or teaches them how to use the time clock and requires them to go to it, that's not enough. We don't have accountability in a criminal sense for leading them there. But in a civil sense, aren't Schumann and your clients working together? They're, I mean, yes, they are in a business relationship together with respect to assigning workers. But the controlling issue when it comes to BIPA is the entity that is collecting the biometric data, and that is not my client. That is not Metro staff. That is Schumann and or PACOM. I'm not... Well, your client is leading the horse to water, so to speak, though, correct? My client is leading the horse to water. I do acknowledge that, yes, we are involved, my client is involved in the enrollment. They sign the individuals up at the behest of Schumann, and they use the clocks that Schumann has provided. However, they are not touching the data. They can't access the data. I mean, the entire purpose of BIPA is to protect from identity theft. And that is identity theft through the unauthorized dissemination of biometric data in this case or other protected information. My client and neither my client nor Metro staff can disseminate or are at risk of disclosing the information to individuals or entities that aren't authorized to have access to it because they can't access it themselves. So, in short, you would have... Answering Justice Anderson's question answers the question. If you don't put your hands on it, you're not liable. That's correct, Justice. Thank you. Not even if you acted as sort of a conduit to the person who got the data? I'm sorry. I think I was speaking, and I missed part of that question. Not even if you act sort of as a conduit with the person who actually obtained the data? No, I don't think that entity or that even an individual is liable under BIPA under that circumstance. And as I've thought about this, I mean, you kind of think of like an amusement park where you use biometric data to get into the park. If Disney contracted with SureStaff to staff those workers that are then scanning the visitors in to the system or even showing the visitors how to use that system and how to scan their biometric data, they would not be liable under BIPA because they are not access... They don't have any access to the data. They don't have control over... They can't do anything with the data at the end of the day. And imposing liability on the company or the entity that's just leading the horse to water, in this case, kind of results in an absurd requirement that that entity then has to figure out what is actually being done with the data. How long is an entity like Schuman or Paycom or whomever else is collecting the data, how long are they retaining it so they can fully disclose and provide the requisite information under BIPA to the individuals who are providing the biometric data? You can go on, Mr. Shearn, if you have anything else. Thank you. I think I've hit most of my points. You know, kind of given that explanation and that SureStaff, neither SureStaff nor Metro staff had access to the data. They couldn't use the data and they came into possession of the biometric data that was stored on the time clocks. They cannot, as a matter of law, be subject to liability under BIPA and specifically under Section 15B of BIPA. I'd welcome any other questions, but otherwise I can turn it over to Mr. Gillespie. No questions. All right. Mr. Gillespie, if you're ready. Perfect. Good morning. My name is Peter Gillespie, and I assume you'll please the court. Could you speak up just a little bit, Mr. Gillespie, or get closer to the mic? Sorry about that. Thank you. If it pleases the court, I'm the attorney for Appelli Metro staff and wanted to, would like to take up the issue of the 191 and Discovery. Is there any way you can get your mouth closer to that microphone? Is this better? Yes. Okay. Sorry about that. With respect to the Discovery issue that's been raised, the trial court had the discretion, this is a Discovery matter, and the trial court did not abuse its discretion in saying that additional Discovery was not required before ruling on the sell-a-tax motion. A sell-a-tax motion is a motion where the defendant is saying that the plaintiff cannot win because the defendant has information that the plaintiff can't have access to. In the Giada's case that was cited, the issue was did any employee of the defendant park district have knowledge of the defective condition? The defendant put up one witness as an affiant, and the court correctly said, well, what about the rest? What about the rest of the employees there? The classic example of it would be if in order to win on summary judgment, the plaintiff had to know what number I was thinking of, and I said, well, you don't know that number, so we win. Obviously, you can take a deposition there. They ask me the question, what number am I thinking of? You don't force them to guess. Here, it's not a sell-a-tax motion because we were relying on information that was available to the plaintiff. The plaintiff put the information into the third amended complaint. Plaintiff said in the third amended complaint that Schumann has exclusive possession of the time clocks that contain the biometric data at issue. This is information that the plaintiff made an affirmative representation to the court about, and so it's not a sell-a-tax motion because we were pointing to the evidence that the plaintiffs themselves provided to the court in the third amended complaint. Under 191B, the court also had the discretion to deny additional discovery, and the primary reason why the court denied discovery was because the information the plaintiffs requested, the court felt that the plaintiffs were simply barking up the wrong tree. In this case, as plaintiff's counsel indicated, they wanted to know who directed the use of the time clocks and who enabled the features. Well, neither of those questions addressed the issue of, are we in possession or in control over biometric data? Did we obtain the data and do we have it? Neither of those questions address that point at all. The question of who directed the employees to use the time clocks, to enroll in the time clocks, who enabled the biometric feature, simply does not speak to who's actually in control of the data, which was the dispositive issue that the court relied on in saying that neither Metro staff nor SURE staff had possession of the data and therefore could not have collected the data because whatever process was happening, we did not obtain the data. Now, plaintiff's counsel indicated today that they might have also wanted to take discovery over whether the administrative control of the time clocks meant that we could have access to the data, but that's not in their motion. They didn't request discovery from the court in their motion on that specific question. And in fact, they didn't really even raise it with you in an oral argument today when they identified the issues that the court should have allowed them to take discovery on. It's too late at this point. They've waived the issue. It would be too late for them to now say that they should have had the opportunity to take additional discovery over whether or not we actually had access to the data. It's not what they were asking the court about, and I see my time is up. Thank you, Mr. Gillespie. Justice Anderson, any questions? Justice Holdridge? No. Thank you, Mr. Gillespie. Mr. Beaumont, you have five minutes in rebuttal, and did you find my site? I did. It is C-603 in the appendix. Thank you. Please proceed. Just to address where Mr. Gillespie just left off, that the plaintiffs did not make a request for defendants' possession or control over the biometrics. Because the defendants themselves, in their affidavits, they do not assert that they did not have possession or control over the biometrics. This is a silo text motion for summary judgment because they're claiming that the plaintiffs lack evidence, and the plaintiffs lack evidence as to possession and control. Instead of laying out all of the possibilities of how the defendants were able to prove that they never got possession or control, the defendants are flipping the standard on its head and putting the burden of proof on the plaintiffs without any benefit of discovery at all. Don't you have the burden of proof? In a silo text motion where they are saying that we lack evidence, we should have discovery unless they're able to say and lay out all of the ways in which they are not liable. If they would have alleged that they did not have control, or hands-on, so to speak, of the data, then they would have been successful in your opinion. Maybe partially, because if they would have said we do not have possession and given an explanation for that, and not just make a conclusory statement to that effect, that would have been sufficient, and then we would have had to have marshaled evidence in response to that. Thank you. This has been somewhat of a... I'm not sure how much time I have, but as a... There's been some discussion here about gaining control and whether gaining control or possession is an element of 15b collection. I would just like to say that this was specifically rejected by the Supreme Court. In Cothron v. Whitecastle, the Supreme Court stated the defendant's position, and the defendant's position was that these verbs, collect, capture, mean to gain control. The court then went on to state the plaintiff's position, which is that the court should adopt the ordinary dictionary definition of this. In a subsequent section of the court, after the court had summarized the party's positions, the court then went on to say that it accepted the plaintiff's position and rejected the defendant's position, and then went on to define collect, capture, and even to say that collect is distinguishable from things even such as storage. And so the parties here are frankly talking past each other a lot. Of course, even if possession is an element, we would need possession. And so we need to go back to lower court to get that. But from our perspective, it plainly appears that the Supreme Court has rejected the defendant's argument in Cothron that these verbs mean to gain control. Do you want to conclude, Mr. Beaumont? It's frankly made the briefing difficult and this case difficult because there just appears to be such a fundamental disconnect between what the lower court believed about how possession is somehow part of this and what the defendants are arguing instead. But we pulled the briefs in Cothron. Well, Mr. Beaumont, I appreciate your desire to editorialize, but I think you've very much gentlemen for your arguments in this case. We will take this matter under advisement and issue a decision in due course. Have a good day. You too. Thank you. Thank you.